Wesley D. Ray (SBN 026351)
Wesley.Ray@SacksTierney.com
Philip R. Rudd (SBN 014026)
Philip.Rudd@SacksTierney.com
**SACKS TIERNEY P.A.**
4250 N. Drinkwater Blvd., 4th Floor
Scottsdale, AZ 85251-3693
Telephone: 480.425.2600
Facsimile: 480.970.4610
*Attorneys for Debtors*

# IN THE UNITED STATES BANKRUPTCY COURT

## THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 11 Proceedings |
| ANDES INDUSTRIES, INC., | Case No.: 2:19-bk-14585-PS |
| PCT INTERNATIONAL, INC., | Joint Administration With Case No. 2:19-bk-14586-PS |
| Debtors. | Adv. No:_____ |
| This filing applies to: | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF; WRIT OF MANDAMUS; DAMAGES** |
| ___ Both Debtors | |
| _X_ PCT International | |
| ___ Andes International | |
| PCT INTERNATIONAL, INC., | |
| Plaintiff, | |
| v. | |
| JOVITA CARRANZA, IN HER CAPACITY AS ADMINISTRATOR FOR THE U.S. SMALL BUSINESS ADMINISTRATION, | |
| Defendant. | |

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

Plaintiff PCT International, Inc. ("PCT" or "Plaintiff"), debtor and debtor-in-possession in the above-captioned Chapter 11 proceeding, for its *Complaint for Injunctive and Declaratory Relief* ("Complaint") against Defendant Jovita Carranza, in her capacity as administrator for the U.S. Small Business Administration ("Defendant" or "SBA"), hereby alleges and prays as follows:

**OVERVIEW**

1.     Pursuant to the Coronavirus Aid, Relief, and Economic Security Act, H.R. 748 (the "CARES Act"), Congress and the President temporarily added a new program entitled the "Paycheck Protection Program" to the SBA's Section 7(a) Loan Program (hereinafter referred to as the "PPP"). The pertinent portion of the CARES Act relating to the PPP (*i.e.*, Section 1102 of the CARES Act) is attached hereto as Exhibit "A."

2.     The PPP is intended to provide economic relief to small businesses nationwide who have been adversely impacted under the Coronavirus Disease 2019 ("COVID-19").

3.     Among other things, the PPP provides that, so long as the funds disbursed to a small business pursuant to the PPP are used for certain specified purposes, then the small business will not have to repay the funds disbursed to it.

4.     Consequently, the PPP is "not a loan program at all. It is a grant or support program." *See Opinion* entered on May 1, 2020 in *Roman Catholic Church of the Archdiocese of Sante Fe v. U.S. Small Business Administration (Roman Catholic Church of the Archdiocese of Sante Fe)*, Case No. 18-13027 (Bankr. D.N.M. 2020) ("New Mexico Opinion") at p. 10. A copy of the New Mexico Opinion is attached hereto as Exhibit "B."

5.     There is nothing in the CARES Act that provides that Chapter 11 debtors-in-possession are disqualified from participating in the PPP.

6.     Nevertheless, in connection with the administration of the PPP, Defendant issued Official Form 2483 entitled the *Paycheck Protection Program Borrower Application Form* (the "PPP Application") which requires small business applicants for the PPP to state whether they are "presently involved in any bankruptcy" (the "No Bankruptcy Requirement") and, if they state that they are, then "the loan will not be approved." A copy

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

of the PPP Application is attached hereto as Exhibit "C."

7.     Further, the SBA issued a *Paycheck Protection Program Lender Application Form – Paycheck Protection Program Loan Guaranty* ("PPP Lender Application") which states that the PPP loan cannot be approved unless the applicant certifies that neither the applicant nor any owner is presently involved in any bankruptcy. A copy of the PPP Lender Application is attached hereto as Exhibit "D."

8.     On April 28, 2020, the SBA issued an interim final rule (the "April 28th Rule"). The April 28th Rule purports to disqualify bankruptcy debtors from the PPP by stating :

> *Will I be approved for a PPP loan if my business is in bankruptcy?*
>
> No. If the applicant or the owner of the applicant is the debtor in a bankruptcy proceeding, either at the time it submits the application or at any time before the loan is disbursed, the applicant is ineligible to receive a PPP loan. . . .The Administrator, in consultation with the Secretary, determined that providing PPP loans to debtors in bankruptcy ***would present an unacceptably high risk for an unauthorized use of funds or non-repayment of unforgiven loans.***
> (emphasis added).

9.     Defendant's inclusion of the No Bankruptcy Requirement for participation in the PPP—in the PPP Application, the PPP Lender Application, the April 28th Rule and in other aspects of the administration of the PPP—is:

(a)     "[A]rbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" (5 U.S.C. § 706(2)(A));

(b)     "[I]n excess of statutory jurisdiction, authority, or limitations, or short of statutory right" (5 U.S.C. § 706(2)(A)); and

(c)     Discriminatory against debtors in bankruptcy in violation of 11 U.S.C. § 525(a).

10.     This is an action against the SBA under the Administrative Procedure Act, 5 U.S.C. §§ 701 et seq. (the "APA") and 11 U.S.C. §§ 105 and 525, seeking:

a.     An order setting aside and vacating the SBA's No Bankruptcy Requirement in the PPP Application, the PPP Lender Application, the April 28th Rule, and any and all other procedures, processes and/or documents relating to the

PPP.

b. A declaratory judgment that the SBA's imposition of the No Bankruptcy Rule in the implementation of the PPP is unlawful, discriminatory against prospective borrowers who are debtors in bankruptcy, and beyond its statutory authority.

c. A writ of mandamus under 28 U.S.C. § 1361 to compel the SBA the remove its disqualification of bankruptcy debtors as viable applicants from all PPP applications, including the PPP Application.

d. An order enjoining the SBA, and anybody acting in concert with or at the direction of the SBA from denying Plaintiff a loan under the PPP based on the Plaintiff's status as a chapter 11 debtor or based on the words "or presently in bankruptcy" on the PPP Application or PPP Lender Application.

e. An order requiring the SBA to remove all references to Plaintiff's status as being involved in any bankruptcy from its PPP Application and from any PPP loan policies and procedures, and PPP loan agreements relating to Plaintiff.

f. An order requiring the SBA to instruct all lending institutions administering PPP loans to which Plaintiff has submitted a PPP Application that there is no exclusion from the PPP loan program on account of Plaintiff's involvement in this Bankruptcy Case.

g. An order providing that the Defendant will not authorize, guaranty, or disburse funds appropriated for loans under the PPP without reserving sufficient funds or guaranty authority within the scope of the most recent appropriations to fund the PPP to provide Plaintiff with access to funds under the PPP if the Debtor is eligible to receive PPP funds following the implementation of the foregoing declarations and injunctions.

h. An order authorizing Plaintiff to submit a PPP Application, or any other documents necessary for the processing of the PPP Application, to a participating lender of its choosing with the words "or presently involved in any bankruptcy"

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251–3693

stricken from the PPP Application and without any reference to this Bankruptcy Case, and providing that any lender shall consider such PPP Application and other documentation to be complete and accurate.

11.     Plaintiff also seeks an award of its costs and attorneys' fees against the United States generally, or against the SBA specifically, pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334(b) because it arises under 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") and arises in a case under the Bankruptcy Code.

13.     Jurisdiction over this matter is also proper pursuant to the judicial review provisions of the APA.

14.     This is a core matter pursuant to 28 U.S.C. § 157(b)(2)(A), (D), and (O).

15.     Defendant's decision to exclude Plaintiff from the PPP is core because it "goes to the very heart of case administration, as the funds were intended by Congress to replace Plaintiff's lost revenue caused by the government lockdowns" and the COVID-19 pandemic. *See* New Mexico Order at p. 8.

16.     A proceeding to determine whether a governmental unit, such as Defendant, has violated 11 U.S.C. § 525(a) is a core matter.

17.     In the event that any part of this action is determined not to be a core matter, Plaintiff consents to the Court's entry of a final judgment pursuant to 11 U.S.C. § 157(c). The Court therefore has Constitutional authority to enter a final judgment on all issues raised in this Complaint.

18.     Declaratory and injunctive relief is sought consistent with 5 U.S.C. § 706 and as authorized in 28 U.S.C. § 2201 and 2202, and pursuant to Rule 65, FRCP, as incorporated herein by Rule 7065, FRBP.

19.     Venue is proper in this district pursuant to 28 U.S.C. § 1409.

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251–3693

## PARTIES

20. Plaintiff is a debtor in the above-captioned Chapter 11 cases, and remains in possession of its property, and is operating its business, as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

21. Defendant is Jovita Carranza in her capacity as administrator for the U.S. Small Business Administration (the "SBA").

22. The SBA is an independent agency of the United States government and can sue and be sued in any court of general jurisdiction. *See* 11 U.S.C. § 634(b).

## FACTS

**The Debtors, their Operations and the Negative Impact of COVID-19**

23. On November 15, 2019 (the "Petition Date"), involuntary Chapter 7 bankruptcy petitions were filed against PCT and its parent corporation, Andes Industries, Inc. ("Andes" and, together with PCT, the "Debtors"), thereby commencing the above-captioned bankruptcy cases.

24. On December 2, 2019, the Debtors filed motions to voluntarily convert their bankruptcy cases to cases under chapter 11 of the Bankruptcy Code.

25. The Debtors' motions to convert were granted and an order for relief was entered in these cases on December 4, 2019.

26. The Debtors are authorized to operate their business as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

27. The Debtors have been in business for over twenty years.

28. The Debtors provide equipment and solutions to telecommunications providers for the "last mile" of signal transmission between major trunk lines and end-users' homes and businesses.

29. The Debtors offer a complete line of products, including many interrelated components such as cable, taps, connectors, amplifiers, filters, and splitters.

30. Importantly, the Debtors have been designated as providers of an "essential" telecommunications infrastructure service.

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251–3693

31.     Indeed, the United States Department of Justice once filed suit to protect the Debtors' competitive position in the Debtors' market space and documented Debtors' role in maintaining price competition with a competitive impact statement filed with the Court in that case.

32.     The Debtors' products, many of which were developed by the Debtors, are technologically sophisticated and are protected by over 150 patents.

33.     The Debtors and their wholly owned subsidiaries are a worldwide organization with manufacturing operations in Vietnam and China.   PCT's shareholder, Deltacom Electronics, produces RF products and jacket cable, utilized by the Debtors, in Bulgaria. PCT has engineering and product management services in the United States and China, warehouses in the United States (in California, Virginia, Arizona and Florida), Vietnam, the United Kingdom, and the Netherlands, and sales and support teams in, among other areas, the United States, Europe, Asia, Mexico, Central and South America.

34.     The Debtors employ, directly or indirectly through their various subsidiaries, over 250 employees in 7 countries.

35.     The Debtors' creditors hold over $60,000,000 in claims.

36.     As the Debtors demonstrated in connection with their motion to extend exclusivity, the Debtors' operations were significantly adversely affected by the COVID-19 epidemic and the resultant worldwide economic turmoil.

37.     For example, PCT operates an assembly plant in China, a manufacturing plant in Vietnam, and works closely with a key supplier in Bulgaria.  All of these operations rely on parts produced from third party suppliers located in China.  Yet, according to news reports, following the initial outbreaks of COVID-19 on or around January 23, 2020, approximately 760 million Chinese citizens were placed on lockdown.[1]

38.     The shutdown affected all industrial areas and all of PCT's China-based

_____

[1] See e.g.,https://www.nytimes.com/2020/02/15/business/china-coronavirus-lockdown.html.

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

material suppliers. Manufacturing plants and supply chains throughout China were shut down, leaving manufacturers who relied on Chinese made parts, like PCT and its competitors, facing two debilitating concerns: A lack of raw materials and components needed for their production lines and an enormous shortage of workers due to the lockdown.[2]

39.     Suppliers and shippers were not allowed to operate. Prior to re-opening in late February or early March, each business was required to get a permit from the Chinese government and had to test and record, daily, each employee's temperature.

40.     PCT's assembly plant in China shut down on January 20, 2020, initially to accommodate the Chinese New Year or Spring Festival, and did not reopen until the end of February, 2020, after having been closed for 40 days.

41.     Similarly, PCT's supplier in Bulgaria was closed for two weeks in mid-March due to COVID-19 concerns.

42.     Although PCT's Vietnam manufacturing plant has not been forced to close, it relied upon parts from China to operate which were not being shipped.

43.     At the time of the shutdowns, and as predicted in the Debtors' projections, PCT had sufficient orders from its customers in February and March to reach its projected sales goals of $3 million per month. However, the shutdowns and the cessation of parts production and delivery in China resulted in a slowdown to PCT's ability to fulfill the orders for approximately 60 days.

44.     PCT's top line sales for February and March were, consequently, negatively affected and the sales projections were, temporarily, not achieved.

45.     The shut down and COVID-19 have had a deleterious effect on the Debtors' business operations.

46.     The Debtors are currently formulating a plan of reorganization that will allow

---

[2] See e.g., https://www.nbcnews.com/business/business-news/idled-car-production-iphone-delays-china-s-factory-closures-mean-n1133966.

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251–3693

them to continue providing their essential services to the world, and keeping hundreds of people employed.

47.     However, the Debtors' on-going viability is affected by the dramatic and unexpected decrease in their revenue caused by COVID-19 and its aftermath.

48.     The Debtors' on-going viability and their ability to pay their employees, vendors and pre-petition creditors is negatively affected without the relief afforded by the CARES Act, particularly the PPP.

49.     PCT needs the PPP loan to shore up its finances and allow it to continue to support the community as an essential provider of necessary telecommunications infrastructure during the crisis.

**The CARES Act and the PPP**

**Overview of the PPP and Eligibility Requirements of the CARES Act**

50.     In response to the economic catastrophe caused by the COVID-19 pandemic, Congress passed the CARES Act, which was signed into law on March 27, 2020.

51.     The PPP is part of the CARES Act that extends the loan program under section 7(a), 15 U.S.C. § 636, of the Small Business Act to any business with less than 500 employees who apply for funds through any participating federally insured lending institution. *See generally* § 1102 of the CARES Act.

52.     The PPP allows a qualified business to receive loans equal to 2.5 times their average monthly payroll, up to $10 million.

53.     No collateral or personal guarantees are required to receive a PPP loan.

54.     Neither the SBA nor lenders charge any fees for the PPP loan.

55.     The CARES Act explicitly waives certain requirements under section 7(a) of the Small Business Act, such as exhausting other credit options first, prepayment penalties, and personal guarantee requirements for PPP loans.

56.     PPP loans may be fully forgiven if the money is used for payroll and related expenses (subject to certain caps), rent, utilities, and interest on debts incurred before February 15, 2020.

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

57. Loaned money used for other purposes would need to be repaid, but at a low, fixed interest rate, and payments would be deferred for up to a year.

58. The PPP has very few eligibility requirements under the CARES Act. Specifically, an applicant must only:

a. Be a small business concern or any business concern, nonprofit organization, veterans organization, or Tribal business concern described in section 31(b)(2)(C) of the Small Business Act;

b. Have fewer than 500 employees or, if applicable, the size standard in number of employees established by the Administration for the industry in which the business concern, nonprofit organization, veterans organization, or Tribal business concern operates;

c. Have been in operation on February 15, 2020; and

d. Have had employees to whom the applicant pays salaries and payroll taxes.

59. Plaintiff meets all eligibility requirements for a PPP loan under the CARES Act.

**Limited Availability of PPP Funds**

60. The PPP was initially funded with $350 billion but, due to overwhelming demand, that amount was quickly expended, and additional legislation has been passed to authorize funding of at least an additional $320 billion.

61. Upon information and belief the additional PPP funds are very quickly being exhausted such that it is imperative that relief be granted to PCT before all of the funds are depleted.

62. Although things can change, political leaders have indicated that there will not be further PPP funding after the current funds are exhausted.

**There is No Prohibition Against Debtors in Bankruptcy Receiving a PPP Loan in the CARES Act**

63. There is no statutory provision in either the CARES Act or the Small Business

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

Act that prohibits extending a PPP loan to a debtor and debtor in possession under Chapter 11 of the Bankruptcy Code.

64.     There is nothing in the CARES Act that requires an applicant to show creditworthiness.  Rather, "the CARES Act makes PPP money available regardless of financial distress. Financial distress is presumed. Given the effect of the lockdown, many, perhaps most, applicants would not be able to repay their PPP loans. They don't have to, because the 'loans' are really grants. Repayment is not a significant part of the program. That is why Congress did not include creditworthiness as a requirement."  New Mexico Opinion at p. 10.

**The SBA's Interim Rules Regarding the Administration of the PPP**

65.     On April 2, 2020, the SBA issued an interim final rule (the "First Interim Rule") providing guidance on, among other things, the eligibility requirements to receive a loan under the PPP.

66.     The First Interim Rule adopts the ineligibility standards set forth in section 120.110, title 13 of the Code of Federal Regulations ("CFR 120.110"), as further described in SBA's Standard Operating Procedure 50-10, Subpart B, Chapter 2 ("SOP 50-10"). *See* First Interim Rule, 2(c) ("Businesses that are not eligible for PPP loans are identified in 13 CFR 120.110 and further described further in SBA's Standard Operating Procedure").

67.     The SOP 50-10 provides that a "Small Business Applicant" must, among other things: be an operating business; be located in the United States; be small (as defined by the SBA); and demonstrate the need for the desired credit. *See* SOP 50-10, pg. 85.

68.     The SOP 50-10 also provides that the businesses listed in CFR 120.110 are not eligible for an SBA loan. Bankruptcy debtors are not the listed as an ineligible business in CFR 120.110.

69.     Nothing in the SOP 50-10 makes the Plaintiff ineligible for a PPP loan.

70.     On April 4, 2020, the SBA issued a supplemental interim final rule further providing guidance on the PPP (the "Second Interim Rule").  Again, the Second Interim Rule does not provide that bankruptcy debtors are ineligible for the PPP loan.

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

71.     On April 28, 2020, the SBA issued another interim final rule (*i.e.,* the April 28th Rule which purports to disqualify bankruptcy debtors from the PPP.

### The PPP Application

72.     To receive a disbursement under the PPP, a qualified business must submit a PPP Application, using the PPP Application form created by the SBA on or about April 2, 2020, with any federally insured participating lender.

73.     Even though neither the CARES Act nor the SBA's first three interim rules concerning the PPP, prior to the April 28th Rule, prohibits the extension of a PPP loan to a Chapter 11 debtor-in-possession, the PPP Application asks if "the Applicant … [is] presently involved in any bankruptcy." *See* Question No. 1, PPP Application, attached hereto as Exhibit "C."

74.     The PPP Application states that "[i]f questions (1) or (2) below are answered "Yes," the loan will not be approved." *Id.*

### Plaintiff Applied for a PPP Loan and Was Rejected Solely Because it is a Debtor in Bankruptcy

75.     Notwithstanding this prohibition in the PPP Application, PCT submitted a PPP Application to its regular lender, Comerica Bank ("Comerica") on April 14, 2020, and answered "yes" to Question No. 1.

76.     Pursuant to its PPP Application, Plaintiff requested the disbursement of PPP Funds to it in the amount of $847,535.

77.     A copy of PCT's completed PPP Application is attached hereto as Exhibit "E."

78.     The only reason PCT answered "yes" to Question #1 is because of this pending Chapter 11 case.

79.     Neither PCT nor its owner are "presently suspended, debarred, proposed for debarment, declared ineligible, voluntarily excluded from participation in this transaction by any Federal department or agency."

80.     PCT meets all other requirements for receipt of a PPP loan.

81.     Plaintiff is a business that Congress intended to benefit from the PPP to

alleviate some of its payroll difficulties.

82.     Comerica rejected PCT's PPP loan application.

83.     Comerica specifically informed PCT that it rejected the PPP application because of PCT's status as a Chapter 11 debtor-in-possession.

84.     Upon information and belief, but for PCT's status as a Chapter 11 debtor-in-possession, Comerica would have made the PPP loan to PCT.

85.     PCT has contacted several other banks regarding a PPP loan and has been informed that, because PCT is a Chapter 11 debtor-in-possession, it is ineligible for a PPP loan, despite the lack of any such disqualifying criteria in the CARES Act.

86.     There are no administrative appeals or remedies available to Plaintiff to seek review of Defendant's decision to exclude Plaintiff from the PPP.

87.     If approved, PCT would have used, and, if allowed to reapply for a PPP loan with the bankruptcy exclusion removed, will use the funds to ***only*** pay items that qualify for forgiveness, including its rent, utility, insurance, and full-time employees' payroll costs.

88.     These are all permissible uses under either under section 1102 or 15 U.S.C. § 636(a) that allow use of loaned funds for "working capital."

89.     Plaintiff has the financial and accounting ability to follow all PPP rules and requirements regarding the use of PPP funds to ensure that the "loan" will be forgiven pursuant to the terms of the CARES Act.

90.     Plaintiff will file a motion in the Bankruptcy Court seeking entry of an order pursuant to Bankruptcy Code § 364(b) authorizing Plaintiff to obtain post-petition financing on an unsecured basis (the "PPP DIP Financing Motion").

## COUNT I

### Administrative Procedure Act – Exceeds Statutory Authority

91.     Plaintiff hereby incorporates each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

92.     Under the APA, courts must "hold unlawful and set aside agency action, findings and conclusions found to be . . . in excess of statutory jurisdiction, authority, or

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

limitations, or short of statutory right." 5 U.S.C. § 706(2)(C).

93.    Defendants may only exercise authority conferred by statute.

94.    The SBA issued the First Interim Rule which provides guidance on, among other things, the eligibility requirements to receive a loan under the PPP. The First Interim Rule adopts the ineligibility standards set forth in CFR 120.110, as further described in SOP 50-10.

95.    SOP 50-10 provides that a "Small Business Applicant" must, among other things:  be an operating business; be located in the United States; be small (as defined by the SBA); and demonstrate the need for the desired credit. See SOP 50-10, p. 85.

96.    SOP 50-10 also states that the businesses listed in CFR 120.110 are not eligible for an SBA loan.

97.    Bankruptcy debtors are not the listed as an ineligible business in CFR 120.110.

98.    Notwithstanding the foregoing, the SBA issued the PPP Application on or about April 2, 2020, which purports to disqualify bankruptcy debtors from participation in the PPP.

99.    Further, the SBA issued the PPP Lender Application, which states that the PPP loan cannot be approved unless the applicant certifies that neither the applicant nor any owner is presently involved in any bankruptcy.

100.    The SBA issued the Second Interim Rule which further provides guidance on the PPP but does not provide that bankruptcy debtors are ineligible for the PPP loan.

101.    The SBA then issued the April 28th Rule which provides that debtors in bankruptcy are not eligible to participate in the PPP.

102.    The No Bankruptcy Requirement in the April 28th Rule, PPP Application and PPP Lender Application exceeded the Defendant's statutory authority and are in direct contravention and in violation of the purposes and provisions of the CARES Act.

103.    The Defendant's articulated "justification" for the bankruptcy disqualification—that bankruptcy debtors "present an unacceptably high risk for an unauthorized use of funds or non-repayment of unforgiven loans"—is frivolous, arbitrary

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

and capricious and is contrary to the oversight that the Bankruptcy Court, the United States Trustee's Office and the Plaintiff's creditor body imposes on the Plaintiff as a debtor-in-possession.

104. The CARES Act directly addresses the PPP eligibility requirements, but the Defendant unilaterally and without authority changed the eligibility by imposing the No Bankruptcy Requirement.

105. Defendants implemented the PPP in a manner that unlawfully excludes debtors in bankruptcy.

106. Nothing in the CARES Act, SBA Regulations, SOP 50-10, the First Interim Rule, or the Second Interim Rule authorizes or permits the SBA to exclude debtors in bankruptcy from the PPP.

107. Defendants' implementation of the PPP in a manner that causes debtors in bankruptcy, including Plaintiff, to be ineligible is therefore "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," in violation of the APA. 5 U.S.C. § 706(2)(C).

108. The SBA has made a final determination with respect to the issuance of the PPP Application and the PPP Lender Application.

109. There are no administrative appeals or remedies available to Plaintiff to seek review of the SBA's determination to issue the PPP Application, the PPP Lender Application and the April 28th Rule.

110. Pursuant to § 706 of the APA the No Bankruptcy Requirement imposed by the SBA must be set aside, stricken and vacated.

111. Plaintiff is entitled to a declaratory judgment that Defendants' implementation of the PPP in a manner that causes debtors in bankruptcy, including Plaintiff, to be ineligible is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," in violation of the APA.

112. Plaintiff is entitled to preliminary and permanent injunctive relief enjoining Defendant from denying Plaintiff a loan under the PPP based on the Plaintiff's status as a

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

chapter 11 debtor.

113. Plaintiff is likely to succeed on the merits of its claims against the SBA.

114. Plaintiff will likely suffer immediate and irreparable harm as a result of the unlawful No Bankruptcy Requirement because the PPP offers applicants guaranteed loans that are not otherwise obtainable in the private marketplace, the PPP funds are disbursed on a first-come, first served basis and are quickly being depleted even after Congress enacted further relief.

115. Without a PPP loan, the Plaintiff may be forced to lay off or furlough essential employees which will have an effect on the Plaintiff's bankruptcy estate and alter how this Chapter 11 case will be administered.

116. Further, the balance of the hardships weighs heavily in favor of the issuance of injunctive relief.

117. Plaintiff has no adequate remedy at law.

118. Public policy favors allowing Plaintiff to participate in the PPP because Plaintiff provides essential telecommunications services to the nation and the world, and the PPP was implemented specifically to assist businesses such as Plaintiff's.

### COUNT II

### Administrative Procedure Act – Arbitrary and Capricious

119. Plaintiff hereby incorporates each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

120. The APA provides that courts must "hold unlawful and set aside agency action, findings and conclusions found to be . . . arbitrary, capricious, [or] an abuse of discretion." 5 U.S.C. § 706(2)(A).

121. The SBA issued the First Interim Rule which provides guidance on, among other things, the eligibility requirements to receive a loan under the PPP. The First Interim Rule adopts the ineligibility standards set forth in CFR 120.110, as further described in SOP 50-10.

122. SOP 50-10 provides that a "Small Business Applicant" must, among other

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

things: be an operating business; be located in the United States; be small (as defined by the SBA); and demonstrate the need for the desired credit. See SOP 50-10, pg. 85.

123. SOP 50-10 also provides that the businesses listed in CFR 120.110 are not eligible for an SBA loan. Bankruptcy debtors are not the listed as an ineligible business in CFR 120.110.

124. Notwithstanding the foregoing, the SBA issued the PPP Application that purports to disqualify bankruptcy debtors from participation in the PPP.

125. Further, the SBA issued the PPP Lender Application which states that the PPP loan cannot be approved unless the applicant certifies that neither the applicant nor any owner is presently involved in any bankruptcy. See Exhibit "D."

126. The SBA issued the Second Interim Rule which further provides guidance on the PPP. The Second Interim Rule does not provide that bankruptcy debtors are ineligible for the PPP loan.

127. The SBA then issued the April 28th Rule which provides that debtors in bankruptcy are not eligible to participate in the PPP.

128. The No Bankruptcy Requirement in the April 28th Rule, PPP Application and PPP Lender Application exceeded the Defendant's statutory authority and are in direct contravention and in violation of the purposes and provisions of the CARES Act.

129. The Defendant's articulated "justification" for the bankruptcy disqualification—that bankruptcy debtors "present an unacceptably high risk for an unauthorized use of funds or non-repayment of unforgiven loans"—is frivolous, arbitrary and capricious and is contrary to the oversight that the Bankruptcy Court, the United States Trustee's Office and the Plaintiff's creditor body imposes on the Plaintiff as a debtor-in-possession.

130. The CARES Act directly addresses the PPP eligibility requirements but the Defendant unilaterally and without authority changed the eligibility by imposing the No Bankruptcy Requirement.

131. Defendants implemented the PPP in a manner that unlawfully excludes debtors

in bankruptcy.

132. Nothing in the CARES Act, SBA Regulations, SOP 50-10, the First Interim Rule or the Second Interim Rule authorizes or permits the SBA to exclude debtors in bankruptcy from the PPP.

133. Defendants' implementation of the PPP in a manner that causes debtors in bankruptcy, including Plaintiff, to be ineligible is therefore "arbitrary, capricious, [or] an abuse of discretion" in violation of the APA. 5 U.S.C. § 706(2)(A).

134. The SBA has made a final determination with respect to the issuance of the PPP Application and the PPP Lender Application.

135. There are no administrative appeals or remedies available to Plaintiff to seek review of the SBA's determination to issue the PPP Application and the PPP Lender Application.

136. Pursuant to § 706 of the APA the No Bankruptcy Requirement imposed by the SBA must be set aside, stricken and vacated.

137. Plaintiff is entitled to a declaratory judgment that Defendants' implementation of the PPP in a manner that causes debtors in bankruptcy, including Plaintiff, to be ineligible is "arbitrary, capricious, [or] an abuse of discretion" in violation of the APA.

138. Further, Plaintiff is entitled to preliminary and permanent injunctive relief enjoining Defendants from denying Plaintiff a loan under the PPP based on the Plaintiff's status as a chapter 11 debtor.

139. Plaintiff is likely to succeed on the merits of its claims against the SBA.

140. Plaintiff will likely suffer immediate and irreparable harm as a result of the unlawful No Bankruptcy Requirement because the PPP offers applicants guaranteed loans that are not otherwise obtainable in the private marketplace, the PPP funds are disbursed on a first-come, first served basis and are quickly being depleted even after Congress enacted further relief.

141. Without a PPP loan, the Plaintiff may be forced to lay off or furlough essential employees which will have a permanent effect on the Plaintiff's bankruptcy estate and alter

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

how this Chapter 11 case will be administered.

142. Further, the balance of the hardships weighs heavily in favor of the issuance of injunctive relief.

143. Plaintiff has no adequate remedy at law.

144. Public policy favors allowing Plaintiff to participate in the PPP because Plaintiff provides essential telecommunications services to the nation and the world, and the PPP was implemented specifically to assist businesses such as Plaintiff's.

## COUNT III

**Violation of 11 U.S.C. § 525 – Discriminatory Treatment of Chapter 11 Debtor**

145. Plaintiff hereby incorporates each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

146. Section 525(a) of the Bankruptcy Code provides, in relevant part, that "a governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to . . . a person that is or has been a debtor under this title." 11 U.S.C. § 525(a). This list is illustrative rather than exhaustive.

147. The PPP is a government program designed to provide relief to small businesses affected by COVID-19.

148. The PPP is not a loan program; rather, it is a grant or support program. *See* New Mexico Order at pp. 10 and 14.

149. The SBA is denying Plaintiff the benefits provided by the PPP through No Bankruptcy Requirements in violation of section 525(a) of the Bankruptcy Code.

150. Plaintiff is not being denied access to the PPP because of its creditworthiness. In fact, the PPP was enacted to provide relief to struggling small businesses without regard to their creditworthiness.

151. But for the No Bankruptcy Requirements, Plaintiff is otherwise eligible for a PPP loan.

152. As such, the No Bankruptcy Requirements are interfering with Plaintiff's

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

ability to obtain a "fresh start" and its ability to retain its employees many of whom are crucial to the Plaintiff's business as going concerns.

153.    Through the No Bankruptcy Requirements, Defendants have discriminated against chapter 11 debtors generally, and Plaintiff in particular, in violation of Section 525(a) of the Bankruptcy Code.

154.    Defendants' violation causes ongoing harm to Plaintiff.

155.    Plaintiff is entitled to a declaratory judgment that Defendants' implementation of the PPP in a manner that causes debtors in bankruptcy, including Plaintiff, to be ineligible is unlawful and discriminatory against debtors in bankruptcy in violation of Section 525(a) of the Bankruptcy Code.

156.    Further, Plaintiff is entitled to preliminary and permanent injunctive relief enjoining Defendants from denying Plaintiff a loan under the PPP based on the Plaintiff's status as a chapter 11 debtor.

157.    Plaintiff is likely to succeed on the merits of their claims against the SBA.

158.    Plaintiff will likely suffer immediate and irreparable harm as a result of the unlawful No Bankruptcy Requirement because the PPP offers applicants guaranteed loans that are not otherwise obtainable in the private marketplace, the PPP funds are disbursed on a first-come, first served basis and are quickly being depleted even after Congress enacted further relief.

159.    Without a PPP loan, the Plaintiff may be forced to lay off or furlough essential employees which will have a permanent effect on the Plaintiff's bankruptcy estate and alter how this Chapter 11 case will be administered.

160.    Further, the balance of the hardships weighs heavily in favor of the issuance of injunctive relief.

161.    Plaintiff has no adequate remedy at law.

162.    Public policy favors allowing Plaintiff to participate in the PPP because Plaintiff provides essential telecommunications services to the nation and the world, and the PPP was implemented specifically to assist businesses such as Plaintiff's.

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

**COUNT IV**

**Mandamus Under 28 U.S.C. §1361**

163.    Plaintiff hereby incorporates each and every allegation contained in foregoing paragraphs as though fully set forth herein.

164.    The Defendants have the non-discretionary duty to comply with the CARES Act and the provisions of the PPP to apply criteria to the PPP that are substantively and/or procedurally valid and to avoid imposing criteria to the PPP that are substantively and/or procedurally ultra vires.

165.    Plaintiff is entitled to a writ of mandamus under 28 U.S.C. § 1361 to compel the SBA to remove from all PPP applications, including the PPP Application and the PPP Lender Application its disqualification of bankruptcy debtors as viable applicants because SBA acted beyond its statutory authority in implementing such disqualifying factors.

**COUNT V**

**Injunction**

166.    Plaintiff incorporates all preceding allegations of this Complaint herein by this reference.

167.    In addition to the foregoing injunctions, PCT is entitled to a Court order enjoining the SBA from requiring applicants to not be "presently involved in any bankruptcy" in order to qualify for a PPP loan.  There is no such requirement in section 1102 of the CARES Act or under § 7(a) of the Small Business Act.  By enforcing this requirement, the Defendant is exceeding her authority under the CARES Act.

168.    PCT is entitled to injunctive relief, and a declaration and order, that the SBA must remove all references to a loan applicant's status as being involved in any bankruptcy from its PPP loan applications, PPP loan policies and procedures, and PPP loan agreements.

169.    PCT is also entitled to injunctive relief, and a declaration and order, that SBA must instruct all lending institutions administering PPP loans that there is no exclusion from the PPP loan program on account of involvement in bankruptcy.

170.    PCT is likely to prevail on the merits.

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

171.    The balance of hardships favor issuance of preliminary injunctive relief.

172.    Not receiving a PPP loan may cause PCT and its creditors to suffer immediate and irreparable harm by inhibiting PCT's ability to effectively reorganize and requiring that PCT, instead, liquidate its assets which would result in most of its creditors receiving far less than they would through Debtors' reorganization.

173.    Preliminary and permanent injunctive relief while this matter is pending will not cause any harm to Defendant.

174.    Public policy favors the issuance of the injunctions sought herein.

## COUNT VI

### Declaratory Relief

175.    Plaintiff incorporates all preceding allegations of this Complaint herein by this reference.

176.    Justiciable controversies exist regarding whether (a) the CARES Act precludes a Chapter 11 from participating in the PPP and receiving a PPP Loan, (b) the Defendant has exceeded her authority under the CARES Act by precluding lenders from making PPP loans to otherwise qualified applicants simply because they are involved in a bankruptcy proceeding, and (c) whether a lender participant in the PPP may make a PPP loan to PCT despite the fact that PCT is currently a debtor in bankruptcy.

177.    In addition to the declaratory relief requested above, PCT is entitled to a declaration and order that the SBA must remove all references to a loan applicant's status as being involved in any bankruptcy from its PPP loan applications, PPP loan policies and procedures, and PPP loan agreements.

178.    PCT is also entitled to a declaration and order that SBA must instruct all lending institutions administering PPP loans that there is no exclusion from the PPP loan program on account of involvement in bankruptcy.

## COUNT VII

### Damages

179.    Plaintiff incorporates all preceding allegations of this Complaint herein by this

reference.

180.    If the second tranche of PPP funding becomes depleted without a disbursement of PPP funds to Plaintiff, and there is no supplemental funding of the PPP, Plaintiff is entitled to recover damages against Defendant, in an amount to be determined at trial, based upon the arbitrary and capricious, and wrongful, denial of Plaintiff's timely PPP Application to participate in the PPP Loan program solely based upon Plaintiff being a Chapter 11 debtor.

181.    Defendant's actions in precluding Plaintiff's participation in the PPP were arbitrary, capricious and unlawful and proximately and actually caused damage to Plaintiff in an amount to be proven at trial.

## COUNT VIII

### Attorney's Fees

182.    Plaintiff incorporates all preceding allegations of this Complaint herein by this reference.

183.    Plaintiff is entitled to an award of its costs and attorneys' fees against the United States generally or against the SBA specifically pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412.

WHEREFORE, based on the foregoing PCT prays that the Court:

A.    Issue an order granting the injunctive relief in favor of PCT as requested above and finding that no bond should be required for the emergency relief sought by way of Rule 7065, FRBP.

B.    Issue an order for declaratory relief as requested above.

C.    Alternatively, if PPP funds are not distributed to Plaintiff, award damages in favor of Plaintiff and against Defendant in an amount to be proven at trial.

D.    Find in PCT's favor on all claims asserted in this Complaint.

E.    Award PCT its attorney's fees and costs incurred herein pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412.

….

….

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

F.     Award such other relief as the Court deems just and proper under the circumstances.

DATED:  May 5, 2020.

SACKS TIERNEY P.A.

By: */s/ Philip R. Rudd*
    Wesley D. Ray
    Philip R. Rudd
    Attorneys for Debtors

SACKS TIERNEY  P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693